143855, Thomas Todd, Inc. v. David Custon Good afternoon, Your Honor. My name is Mark Custon. I'm a DAPOA Plano employer. I'm with the Davis Police Council and the Court. This is the Employers' Appeal, Your Honor. I am certainly extremely critical of the Commission's decision in this matter and the Court's two words to argue here today. I don't want to get you too excited. I'm going to use a few more words. But if we're only hearing two words to argue here, it would be result-driven. Why it was result-driven, not for me to speculate, but I suggest to you it was result-driven decision-making here that the arbitrator was correct. The arbitrator was absolutely correct. The arbitrator gave a fair recitation and evaluation and actually weighed the evidence. And when I read this two-member majority opinion from the Commission, it completely ignores substantial, significant evidence. It doesn't even discuss the treating medical records, the statements of this man's treating doctors. It doesn't weigh that evidence and compare and contrast it like the arbitrator does. It simply reaches these conclusions of compensability without truly weighing significant evidence. That's when frequently the Commission will tell us we place greater weight on the opinions of the treating doctor than we did on an examining doctor. Here, they completely ignored the treating records which show this man apparently treated for an incidental finding of a hernia. He saw his doctor in 2010, was noted to have a hernia. While he was actually there, it appears from the medical records, for something else. Later down the line, he doesn't treat for it. No real treatment is recommended for it. There's no indication it's work-related. There's no indication in the medical records that it's related to any work activity. There's certainly no indication it's related to any work accident. He isn't limited in any fashion in terms of his activities on the job, according to this doctor. The recommendation that's made is a personal one to lose weight. On June 1, 2011, we have testimony not of an accident. We have some testimony from the petitioner about doing lighter things at work. There's no corroboration in the medical records of any accident or any activity contributing to this man's hernia condition, even if it necessitates treatment at that point. Well, his theory of recovery was that there was a repetitive strain. This was a result of repetitive activities at work that strained or aggravated it, correct? That was his theory. That is the allegation, yes, sir. And you found Coe to give an opinion that was supportive of that allegation, correct? I mean, they have Dr. Coe's opinion according to it. Obviously, that's what the commission relied on. That's what the commission used as their conclusion to support compensability. And Dr. Palaci basically opined the opposite. It was not connected to any work accident, right? Dr. Palaci concluded the opposite based on an evaluation of the medical records. And the medical records do not support a conclusion that this condition is work-related. The medical records specifically state that physical activity didn't cause the condition. Physical activity wasn't contributing to the condition. The medical records do not support a finding of compensability. They don't support causation. And when Dr. Coe was questioning about it, Dr. Coe admitted, based on this man's medical records, I couldn't find this related to work activity and I couldn't find this related to a work accident. But what specifically do the medical records verify that support that argument that they show it had nothing to do with work? If I may, the first medical treatment that this man received after the June 1, 2011, accident date that's claimed, was on November 8, 2011. Prior to that, he hadn't seen the doctor on account of his hernia since November of 2010. At that point, it appears, based on the treating doctor's records, that it was an incidental finding. At this point, he's going to have an umbilical hernia on November 8, 2011. Well, we're going back a little bit. And he... Claim and testify, he goes to... Well, what I was going to point out, at the time of that visit, he complained of occasionally having discomfort, specifically stating it's not related to any physical activities. Now, let me ask you about this. Testifying, he goes to talk to Dr. Papadopoulos. He says, as months passed, he began to list a claim of testifying. Did he not? He noticed a pulling sensation in the area of the hernia. He said it would occasionally be experienced when he picked up a 50-pound bag of dough mix. By June 1, 2011, he was experiencing hernia symptoms on a more frequent basis. And he advised Todd's owner, Thomas Todd, that he needed to curtail lifting dough and sauce mixes. So that's his chronology of the events, correct? That it was related to him lifting these heavy, you know, 80-pound bags, 50-pound containers. So it isn't like he just suddenly appeared and said, hey, I got up this morning and I had a problem. He gave a chronology, didn't he? Well, it's testimony long after the fact, uncorroborated by the medical records, uncorroborated by his own doctor's records or statements. Uncorroborated and, in fact, contradicted by statements he makes in the medical records. Because that's the point of it. You can make these statements later after the fact, but when they're uncorroborated and unsupported by your own doctor's medical records, and you specifically state to your doctor, you know, I'm not having this problem associated with any physical activities, and your medical records don't support what you're saying, you don't turn around and leave those statements. I submit to you, this wasn't a fair reading of the evidence. This wasn't a fair evaluation of the evidence. He did not have a compensable work accident. I don't believe, I would submit to you, that the activities that he alleges even rise to the level of repetitive traumatic injury, he has somewhat made in some of his statements about what he's even feeling. On page 14 of the transcript, when he talks about, I'm sorry, page 13 of the transcript, when he testified, he testified about having a pinch or a pulling feeling at times. There's no corroboration of this going on based on his medical records or corroborative evidence that this even relates to his hurting. Well, what about him telling Todd the owner, according to the record, that he was, he needed to curtail lifting dulling suspects because of the physical problem he was having? Doesn't that cooperate with him at all? I mean, he did tell the owner of this, didn't he? Todd didn't testify. This comes from the claimant admittedly, but there was nothing that contradicted that, was there? It treated medical records. It contradicted because they don't support that he required any restrictions or that hernia was a problem at that time that necessitated him limiting that activity. When you talk about him saying that he didn't engage, there was no physical activity, I don't think that's a fair statement of what he actually testified to. He testified that he didn't engage in physical activity. Vis-a-vis, he didn't exercise. He didn't participate in sports, and he never performed any heavy work at home. But he did testify that he was, excuse me, that he was consistently lifting 50-pound bags of dough mix, putting it into a mixing container, and when full, the container weighed about 80 pounds. Now, if you don't consider that physical activity, I don't know what that is. Your Honor, perhaps I misspoke. What I was stating previously was not what the claimant stated he didn't engage in physical activity. What I was stating was his initial medical record post-alleged accident date is November 8, 2011. At that point, he specifically stated to Dr. Milner, by history, occasionally I have this comfort it is not related to physical activity. So while he may engage in certain physical activities on the job, the medical records do not corroborate, based on his very own statements, that it was physical activities on the job that were contributing to any abdominal or hernia condition. Well, to summarize this up, his condition of ill-being is what, an umbilical hernia? His condition is an umbilical hernia, which is a medical condition which can be a disease of life, that can develop in a person without trauma. There's no question of that based on both experts that testify. The question is whether or not there was a work accident, whether or not there was a contribution by some repetitive trauma activities. What I submit to you is based on this man's very own treating medical records. They absolutely do not support that that occurred. Dr. Palachi, who evaluated the petitioner at response to request, reviewed the medical records, testified as to no causation. Dr. Koch reviewed the medical records, admitted they did not support causation, and still offered this opinion, which the commission latched onto, did not weigh all the evidence in my view. And I urge you to reinstate the arbitrator based on his record, which I believe is overwhelming evidence of non-compensability. Thank you. Thank you, Counsel. Counsel, you may respond. May it please the Court. Good afternoon, Your Honors. My name is Jennifer Kelly, and I'm here today on behalf of David Flesner, the defendant appellee in this matter. As you've heard, and as many Justice Hudson and Justice Hoffman pointed out, there is evidence in the record to support the fact that Mr. Flesner sustained a repetitive strain injury to his abdominal region resulting in the umbilical hernia. And what is that evidence in that trial? Well, first of all, as Justice Hudson pointed out, there is Dr. Koch's opinion. And I would like to point out that counsel mischaracterized his testimony, Dr. Koch's testimony, in the fact that in the deposition transcript, clearly Dr. Koch maintains that he believes a causal relationship exists between the hernia condition and Mr. Flesner's work activities. You have Koch to support it. Correct. You have testimony of the claimant. You have Palachi on the other side. Counsel raised an interesting question. Can you answer? He has maintained that when the claimant went to his own physician, he never said anything about the problems related to his work activities. Is that true? And if so, what do you make of that? It is true, Your Honor, that the records do not contain a specific reference to the petitioner understanding the relationship at that point between his work duties and his job. Let me rephrase. He doesn't specifically reference his work activities. Keep in mind this is not the most sophisticated individual, and we don't expect petitioners to be the most sophisticated individuals. When we look at a manifestation date, for instance, in a repetitive trauma case, that's why the analysis is not what a reasonable physician would determine but what a reasonable person would, because things aren't always going to be apparent or as clear to an injured worker as they may be to a physician. Now, the petitioner in his testimony was able to explain his story and explain what occurred, which was that if you look at the medical records, first of all, there is a November 2010 date of treatment where the petitioner reported to his primary care physician for actually his diabetic condition, and on physical examination the treater incidentally found an umbilical hernia. Mr. Flessner testified that at that time he did not have any symptoms in relation to the hernia. There was no specific treatment recommended in relation to the hernia at that time. He continued to perform these heavy lifting activities at work, and as his testimony stated, over the next few months leading up to June 1, 2011, he noticed increased abdominal pressure, increased abdominal pain and straining, notably when lifting these heavy containers at work. And as Justice Hudson pointed out, these weren't only 50-pound containers, as is outlined in the counsel's brief. Actually, once the water was filled in with the dough, they weighed up to 80 pounds. And this was a repetitive activity that he did have to perform on a daily basis, and he testified that he noticed straining in the abdominal region while performing this activity. When he next returns, when he next seeks medical treatment for the hernia on November 8, 2011, it's noted that the hernia has enlarged since the November 2010 visit. So I submit to you that even if, and as counsel has said, this hernia can develop, people can be predisposed to it, and we acknowledge that Mr. Flesner was obese and may have had a predisposition to a hernia, but even if the hernia was an unrelated preexisting condition, he continued to work and that hernia worsened. And by all accounts, even Dr. Palachi, the respondent's examining physician, acknowledges that the hernia worsened during that time and, as of November 2011, required surgical repair. So what is the manifestation date in this case? The manifestation date in this case is June 1, 2011. Was such a date or the commission date because of what? That date was used because that is when Mr. Flesner became personally aware of the connection between his hernia, which at that point, the way he, of course, was describing it, was this pain and pressure in his abdomen and the hernia condition and his lifting at work. That is the day that he realized that continuing to perform this activity, he was fearful it would worsen that condition. He notified his employer that he needed to curtail that heavy lifting activity for fear of making the condition even worse, and that is the date that he, it became reasonably apparent to him that there was a connection between his heavy lifting activity at work and his hernia condition. Now, as you know, when looking at the manifest weight of the evidence standard, the test is whether there is sufficient factual evidence in the record to support the commission's decision. And in this case, there is. There is the opinion of Dr. Koh, which clearly provides an opinion that there is a causal relationship between the hernia and the repetitive activity at work. There is the testimony of the petitioner himself, which further explains how these symptoms developed and what his activities were at work and that they did include heavy lifting on a regular basis. And even Dr. Palachi's testimony during her deposition conceded certain points, one of which is that if an individual had a hernia with a slight bulge, that if that person engaged in ongoing heavy lifting activity, it would worsen. It would worsen over time and it would lead to the need for treatment. She also acknowledged that if it was her own patient that had a hernia like Mr. Flessner's, she would have advised him to refrain from lifting over 25 pounds. Now, in Mr. Flessner's case, he continued to lift 50, 80 pounds on a regular basis to the point where his hernia condition worsened. He became aware of that connection on June 1, 2011, which led him to curtail the heavy lifting he was doing at work and eventually sought additional medical treatment, which confirmed that, in fact, the hernia had worsened and was at the point where it required surgical repair. Now, counsel has indicated that he's extremely critical of the Commission's decision and he obviously disagrees with the Commission's decision, which is his right. And others may look at the evidence and find a different opinion as well. And again, that is a possibility, but that is not what we're looking at. We're looking at, as you know, whether the Commission's decision is supported by the manifest weight of the evidence. And as we know, there is great deference given to the Commission to make these determinations, to weigh the medical and factual evidence. And in this case, they properly placed the weight on Dr. Koh's testimony. I would just point out a couple other points, Your Honor. The respondent in this case also focused on the lack of a specific injury on June 1, 2011. Their brief repeatedly refers to the fact that there was no specific traumatic event referenced on June 1, 2011. But you didn't tell us it doesn't need to be the fact because it's a repetitive measure. Exactly, Justice Hudson, which you obviously know that. But I just wanted to point that out again, that this is a repetitive trauma claim. So we have never made the argument that there was a specific traumatic event on June 1, 2011. That is the manifestation date when Mr. Flesner became aware of the causal relationship. And with that, Your Honors, we would respectfully request that you affirm the well-founded, well-reasoned Commission decision and continue to – or excuse me, and award benefits to Mr. Flesner. Thank you. Thank you, Counsel. Counsel, you may raise. May I raise, Your Honor? Oh, yes. You have five minutes and plus. Thank you. Mr. Flesner, a couple of things. If we are going to assume that June 1, 2011 is a manifestation date, I believe Your Honor pointed out, that carries with it a certain additional implication. That it's still the fact of the injury and it's still the relationship that is assumed to be non-manifestation. That's the case. Why isn't this dated in the medical records? Where is the corroborative evidence in the medical records? Where is the corroborative statement in the record of 2011 in the medical records? It's not there. Why isn't it there? Because this is not a work-related condition. I urge you – I am looking for the correct result here. This is an incidental hernia with a claim of work relationship. That is an afterthought. That's the only figure of creative evidence. This was an afterthought. Sometime later, I work. Therefore, I will make a claim of a work relationship for this condition. Yes, I do understand you can lift something very heavy and it can cause a hernia. But that isn't the only way a hernia happens. And that did not happen here. There is a clear amount of missing in the biomedical records. I think you will need the evidence to go along with that. I appreciate it. Thank you. Thank you, counsel. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement. A written disposition shall issue.